*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LAKOKO RIDLEY,

        Plaintiff-Appellee,

and

ZMC PHARMACY LLC,[1]

        Intervening Plaintiff,

v

ESURANCE INSURANCE COMPANY,

        Defendant-Appellant.

UNPUBLISHED
November 9, 2023

No. 362312
Macomb Circuit Court
LC No. 2019-001889-NF

Before: BOONSTRA, P.J., and BORRELLO and FEENEY, JJ.

PER CURIAM.

Defendant appeals by delayed leave granted[2] the judgment for plaintiff in this first-party no-fault action. On appeal, defendant argues the trial court erred by denying it an award of attorney fees under the no-fault act, denying it sanctions under the case evaluation court rule, and finding its proof of requested attorney fees and case evaluation sanctions insufficient. We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The case arises from a February 11, 2019 motor vehicle accident, in which plaintiff sustained bodily injuries. At the time of the accident, defendant insured plaintiff. Plaintiff filed her May 16, 2019 complaint claiming defendant was obligated to pay personal protection

---

[1] ZMC Pharmacy, LLC was dismissed from the case by stipulated order on July 21, 2021.

[2] *Ridley v Esurance Ins Co*, unpublished order of the Court of Appeals, entered January 4, 2023 (Docket No. 362312).

insurance ("PIP") benefits under the no-fault act, MCL 500.3101 *et seq.*, for medical expenses, attendant care, wage loss, replacement services, and transportation.

On February 3, 2020, the matter proceeded to case evaluation where plaintiff claimed $198,327.67 in medical expenses, $22,975.50 in wage loss, $7,140 in replacement services, and $19,200 in attendant care[3] for a total of $247,643.17, exclusive of interest and attorney fees. The case evaluation award form designated plaintiff as "party #1," intervening plaintiff as "party #2," and defendant as "party #3." The awards were listed as "$3,500.00 in favor of pty # 1 v pty # 2," and "$100,000.00 in favor of pty # 1 vs pty # 3." The accompanying "acceptance/rejection result notice" listed both of the award amounts as for plaintiff and against defendant. Plaintiff and defendant rejected the award.

After trial on July 22, 2021, the jury returned a verdict on July 28, 2021 in favor of plaintiff. The completed verdict form contained the following questions and answers:

> *Q*. Are Plaintiff Lakoko Ridley's claims fraudulent or so excessive as to have no reasonable foundation?
>
> *A*. No

* * *

> *Q*. [W]hat is the amount of allowable expenses owed to Lakoko Ridley (include only expenses not already paid by the defendant)?
>
> *A*. $3,133.71—for payment to Detroit Recieving [sic] Hptl.
>
> *Q*. Was payment for any of the expenses or losses to which Lakoko Ridley was entitled overdue?
>
> (Payment for an expense or loss is overdue if it is not paid within 30 days after the defendant receives reasonable proof of the fact and the amount of the claim. An overdue claim bears interest at the rate of 12 percent per annum from the date the expense or loss became overdue. A claim is not overdue if it is reasonably in dispute)
>
> *A*. No

In August, 2021, defendant moved for mandatory case evaluation sanctions of $26,815.31 in costs and $179,085 in attorney fees, under MCR 2.403(O).[4] About a week later, defendant

---

[3] At case evaluation, defendant produced surveillance reports regarding plaintiff's activities to refute the claims for attendant care.

[4] Subrule MCR 2.403(O) was removed from the rule, effective January 1, 2022, in a December 2, 2021 amendment by order of our Supreme Court. See Administrative Order No. 2020-06, 508

moved for attorney fees in the amount of $197,895 under MCL 500.3148(2) of the no-fault act, alleging plaintiff's claims were so excessive as to have no reasonable foundation. Defendant also argued portions of plaintiff's claims regarding her replacement services and wage loss were fraudulent.

Plaintiff responded to defendant's motions arguing defendant's calculation of its claimed attorney fees was unreasonable and unsupported by anything other than defense counsel's statements, and defendant was entitled to no more than the flat fee of $9,500 paid for counsel's services. Plaintiff requested an evidentiary hearing regarding hours, recoverable costs claimed in the motion for case evaluation sanctions, and defense attorneys' statements regarding these claims. Plaintiff also filed its motion on September 6, 2021 to set aside the case evaluation claiming "[s]he was unable to present bills in excess of $200,000 at trial given Dr. Tessie Chinyere Jenkins/Northwest Neurology Clinic's settlement of a RICO lawsuit involving defendant" and other direct provider actions that were filed after case evaluation and the no-fault act was amended to permit direct provide claims.[5] Defendant acknowledged these direct providers claimed expenses totaling $135,136.66. On October 8, 2021, the trial court denied plaintiff's motion, finding in part that "plaintiff's attempt to continue to collect on behalf of Dr. Jenkins and Northwest Neurology

---

Mich lxxix (2021), Amendments of Rules 2.403, 2.404, and 2.405 of the Michigan Court Rules. The current version of MCR 2.403 does not contain a provision on sanctions. In general, the court rule in effect at the time of the rejection of the evaluation applies. *Haliw v Sterling Hts*, 257 Mich App 689, 695; 669 NW2d 563 (2003), rev'd on other grounds 471 Mich 700 (2005). Further, because all relevant events, such as the case evaluation, trial, and the order denying sanctions, occurred before amendment of the court rule, the version of the court rule in effect throughout the entire pendency of the case is applicable and the basis for analysis. Cf. *Reitmeyer v Schultz Equipment & Parts Co, Inc,* 237 Mich App 332, 335-336. 345; 602 NW2d 596 (1999) ("Thus, while we agree that the 'injustice' exception to MCR 1.102 must be applied narrowly and with restraint, such that the exception does not subsume the rule itself, we find that a decision under MCR 1.102 requires an individual determination in this (and in every) case whether such 'injustice' would result from the application of the amended version of MCR 2.405(E).") This Court in *Reitmeyer,* 237 Mich App at 337, observed, "[a]lthough MCR 1.102 was originally a transitional provision for the introduction of the court rules, '[t]he same principle has been applied to subsequently adopted or amended rules.' 1 Dean & Longhofer, Michigan Court Rules Practice (4th ed.), pp 4–5. Thus, 'the norm is to apply the newly adopted court rules to pending actions unless there is reason to continue applying the old rules.' *Davis v O'Brien,* 152 Mich App 495, 500; 393 NW2d 914 (1986)."

[5] In her motion to set aside the case evaluation award, plaintiff listed Northwest Neurology; Michigan Spine and Pain; MI Imaging; Premier Orthopedics; and Executive Ambulatory Surgical Center as providers whose expenses were removed from the claim between case evaluation and trial by settlement or independent suit. In its response, defendant conceded claimed expenses from these providers were $3500; $9510; $19,200; $29,623; and $73,303.66, respectively, for a total of $135,136.66.

Clinic would suggest she (plaintiff) had an obligation to ensure that she still had that right [to collect], (i.e., Dr. Jenkins and Northwest Neurology Clinic had not been paid or otherwise resolved their alleged right to payment)." The trial court also found, "[s]imilarly, plaintiff would have signed the various assignments of her right to seek payment from defendant to her providers. Having waived those rights, plaintiff clearly can not argue surprise at being prevented from seeking payments on behalf of those providers at trial."

In its November 29, 2021 Opinion and Order, the trial court also denied defendant's motions for costs and fees and directed plaintiff to prepare a judgment consistent with the jury verdict. In the associated opinion, the trial court referenced MCL 500.3148, MCR 2.403(O) and MCR 1.105 and noted, "defendant's motions append more than six hundred (600) pages of exhibits without any meaningful reference to those exhibits." The trial court also found:

> [T]he case evaluators made two awards in favor of plaintiff against defendant, one for $3,500 and another for $100,000. The basis(es) for the two separate awards is not explained or readily discernible.
>
> Significant portions of plaintiff's claims (attendant care, certain medical expenses, replacement services and wage loss) were dismissed after the parties had rejected the case evaluation award. Another substantial portion of plaintiff's claims could not be presented at trial when her medical providers chose to pursue their own recoveries in separate actions; Dr. Tess[y] Jenkins and Northwest Neurology Clinic also entered an unrelated settlement that deprived plaintiff of additional medical expenses and potential testimony regarding the need for both continuing treatment and services. Thus, justice does not favor an award of costs and fees to defendant.
>
> *   *   *
>
> Given the failure to provide satisfactory proof of its costs and fees, defendant is not entitled to costs and fees either under MCR 2.403(O)(1) or MCL 500.3148(2).
>
> Moreover, the jury's verdict specifically referenced the allowable expenses owed to plaintiff as being for payment of Detroit Receiving Hospital's bill. As these expenses were incurred on the date of the accident, defendant's obligation to previously pay these expenses was long overdue. Consequently, plaintiff would be entitled to an award of attorney fees under MCL 500.3148(1) that would offset any award of such fees to defendant under MCL 500.3148(2).
>
> Therefore, defendant is not entitled to an award of costs and fees.

Defendant moved for reconsideration, which the trial court denied. This appeal followed.

II. STANDARD OF REVIEW

The findings of fact underlying an award of attorney fees are reviewed for clear error, *Brown v Home-Owners Ins Co*, 298 Mich App 678, 690; 828 NW2d 400 (2012), while underlying

questions of law are reviewed de novo, *Loutts v Loutts*, 298 Mich App 21, 24; 826 NW2d 152 (2012). A finding is clearly erroneous when, although there is evidence to support it, the appellate court on review of the entire record, is left with a definite and firm conviction a mistake was made. *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 296; 769 NW2d 234 (2009). Where the decision whether to award attorney fees is within the trial court's discretion, it will be reviewed on appeal for an abuse of discretion, as will the award. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008); *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). Additionally, the determination of the reasonableness of the attorney fees will be reviewed on appeal for an abuse of discretion. *Khouri*, 481 Mich at 526; *In re Temple Marital Trust*, 278 Mich App at 128. An abuse of discretion occurs when the court's decision is outside the range of reasonable and principled outcomes. *Khouri*, 481 Mich at 526; *Van Elslander v Thomas Sebold & Assoc, Inc*, 297 Mich App 204, 211; 823 NW2d 843 (2012).

Further, "[w]e review a trial court's decision on a motion for reconsideration for an abuse of discretion." *Woods v SLB Prop Mgmt, LLC*, 277 Mich App 622, 629; 750 NW2d 228 (2008). We review de novo whether the trial court properly interpreted relevant statutes. *Makowski v Governor*, 317 Mich App 434, 441; 894 NW2d 753 (2016).

> The primary goal when construing a statute is to ascertain and give effect to the intent of the Legislature. When determining the Legislature's intent, this Court must first look to the statute's specific language. Judicial construction is unnecessary if the meaning of the language is clear. However, judicial construction is appropriate when reasonable minds can differ regarding the statute's meaning. Terms contained in the no-fault act are read " 'in the light of its legislative history and in the context of the no-fault act as a whole.' " Further, courts should not abandon common sense when construing a statute. Given the remedial nature of the no-fault act, courts must liberally construe its provisions in favor of the persons who are its intended beneficiaries. [*Farmers Ins Exch v AAA of Mich*, 256 Mich App 691, 695; 671 NW2d 89 (2003), quoting *Proudfoot v State Farm Mut Ins Co*, 254 Mich App 702, 708-709; 658 NW2d 838 (2003), aff'd in part and vacated in part on other grounds 469 Mich 476; 673 NW2d 739 (2003).]

"To the extent that this review requires the construction and interpretation of court rules, this Court applies a de novo standard of review." *Tindle, DO v Legend Health, PLLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 360861); slip op at 2.

## III. NO-FAULT SANCTIONS

The trial court did not err in denying attorney fees to defendant under the no-fault act. Considering the jury's verdict finding plaintiff's claim was not fraudulent or excessive, and the changes in the value of plaintiff's claim because of her providers' independent lawsuits and settlements, denial of the fees was within the range of reasonable and principled outcomes.

Generally, attorney fees are not recoverable unless expressly allowed, such as by statute, or court rule. *Haliw v City of Sterling Heights*, 471 Mich 700, 707; 691 NW2d 753 (2005); *In re Waters Drain Drainage Dist*, 296 Mich App 214, 217; 818 NW2d 478 (2012). Exceptions to the rule against awarding attorney fees as damages are to be narrowly construed, and include recovery

of fees incurred as the result of another's fraudulent or unlawful conduct. *Spectrum Health v Grahl*, 270 Mich App 248, 253; 715 NW2d 357 (2006).

MCL 500.3148 of the no-fault act, states, in pertinent part:

(1)     Subject to subsections (4) and (5), an attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits that are overdue.  The attorney's fee is a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.  An attorney advising or representing an injured person concerning a claim for payment of personal protection insurance benefits from an insurer shall not claim, file, or serve a lien for payment of a fee or fees until both of the following apply:

(a) A payment for the claim is authorized under this chapter.

(b) A payment for the claim is overdue under this chapter.

(2)     A court may award an insurer a reasonable amount against a claimant as an attorney fee for the insurer's attorney in defending against a claim that was in some respect fraudulent or so excessive as to have no reasonable foundation. . . .  [MCL 500.3148(1) and (2).]

A trial court *may* award an insurer attorney fees if the "claim was in some respect fraudulent or so excessive as to have no reasonable foundation," MCL 500.3148(2). In its verdict, the jury answered in the negative to the question: "Are Plaintiff Lakoko Ridley's claims fraudulent or so excessive as to have no reasonable foundation?"  Our Supreme Court has repeatedly determined that a jury's verdict must be upheld if there is an interpretation of the evidence that provides a logical explanation for the jury's findings. *Allard v State Farm Ins Co*, 271 Mich App 394, 406-407; 722 NW2d 268 (2006).  Furthermore, the no-fault act puts the decision whether to impose insurer's attorney fees firmly within the trial court's discretion, saying the "court may award an insurer . . . attorney fees."  MCL 500.3148(2).  But the statute does not specify on whose determination of excessiveness or fraud this award should be predicated.  The jury's explicit finding that plaintiff's claims were not "fraudulent or so excessive as to have no reasonable foundation" is, at least, a circumstance the trial court can consider in its discretionary decision whether to award defendant attorney fees under the no-fault act.

Because the decision whether to award attorney fees to an insurer under MCL 500.3148(2) is discretionary, we review whether it is in the range of reasonable and principled outcomes. *Khouri*, 481 Mich at 526.  In denying defendant's request for attorney fees under the no-fault act, the trial court found:

[A] substantial portion of plaintiff's claims could not be presented at trial when her medical providers chose to pursue their own recoveries in separate actions; Dr. Tess[y] Jenkins and Northwest Neurology Clinic also entered an unrelated settlement that deprived plaintiff of additional medical expenses and potential testimony regarding the need for both continuing treatment and services.

Defendant conceded the removal of provider expenses reduced over $135,000 from plaintiff's original claim that exceeded $247,000. As such, the trial court's finding that a substantial portion of plaintiff's claim could not be presented at trial is not clearly erroneous. Although the trial court found plaintiff was obligated to confirm her continued right to collect the PIP benefits she was claiming and could not argue surprise regarding these readily ascertainable changes or surveillance evidence regarding her abilities and actions, this finding does not necessitate a conclusion that plaintiff's claim was "so excessive as to have no reasonable foundation." MCL 500.3148(2). Without specifically addressing defendant's fraud allegations, the trial court considered both the jury verdict of no fraud or excessiveness, and the removal of medical expenses from plaintiff's claims by mechanisms outside of plaintiff's control,[6] to rule against defendant's request for no-fault attorney fees. This ruling is within the range of principled outcomes, so was not reversible error.

Somewhat confusing the analysis is the trial court's statement, in its denial of sanctions under the no-fault act, that the "overdue" nature of the awarded payment to Detroit Receiving Hospital would entitle plaintiff "to an award of attorney fees under MCL 500.3148(1), which would offset any award of such fees to defendant under MCL 500.3148(2)." The trial court clarified this statement in its December 15, 2021 Opinion and Order denying defendant's motion for reconsideration, stating:

> The jury specifically found plaintiff's claims were not fraudulent or so excessive as to have no reasonable foundation. Nonetheless, defendant sought sanctions under MCL 500.3148(2) allegedly because plaintiff's claim was fraudulent or so excessive as to have no reasonable foundation. Defendant, having disregarded the jury's clear finding, is not in a position to complain of plaintiff's entitlement to attorney fees for overdue expenses under MCL 500.3148(1).

The trial court clarified that any conclusion regarding the availability of an attorney fees award for plaintiff pursuant to MCL 500.3182(1) was hypothetical, because the question was not before the court at the time. Rather, the trial court mentioned the potential offset to illustrate the flaw in defendant's logic in ignoring one aspect of the jury verdict while relying on another to save it from a mandatory assessment of plaintiff's attorney fees under MCL 500.3148(1). This tangential discussion on the part of the trial court does not negate the soundness of the independent basis on which the trial court exercised its discretion by denying no-fault sanctions.

## IV. CASE EVALUATION SANCTIONS

---

[6] Indeed, during the pendency of this case, the Michigan Insurance Code was amended effective June 11, 2019 making sweeping changes to the no-fault statutes. See 2019 PA 21. After June 11, "[a] health care provider listed in section 3157 may make a claim and assert a direct cause of action against an insurer, or under the assigned claims plan under sections 3171 to 3175, to recover overdue benefits payable for charges for products, services, or accommodations provided to an injured person."

Having found that defendant was not entitled to attorney fees under MCL 500.3148, we further find that the trial court reached the correct result in denying case evaluation sanctions to defendant but we reach this result for different reasons.

Before January 1, 2022, and at the time of the case evaluation, trial, and defendant's motion for reconsideration, the now-eliminated MCR 2.403(O) addressed the cost liability for a party that rejected a case evaluation award:

(1) If a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation. However, if the opposing party has also rejected the evaluation, a party is entitled to costs only if the verdict is more favorable to that party than the case evaluation.

(2) For the purpose of this rule "verdict" includes,

(a) a jury verdict,

(b) a judgment by the court after a nonjury trial,

(c) a judgment entered as a result of a ruling on a motion after rejection of the case evaluation.

(3) For the purpose of subrule (O)(1), a verdict must be adjusted by adding to it assessable costs and interest on the amount of the verdict from the filing of the complaint to the date of the case evaluation, and, if applicable, by making the adjustment of future damages as provided by MCL 600.6306. After this adjustment, the verdict is considered more favorable to a defendant if it is more than 10 percent below the evaluation, and is considered more favorable to the plaintiff if it is more than 10 percent above the evaluation. . . .

* * *

(6) For the purpose of this rule, actual costs are

(a) those costs taxable in any civil action, and

(b) a reasonable attorney fee based on a reasonable hourly or daily rate as determined by the trial judge for services necessitated by the rejection of the case evaluation, which may include legal services provided by attorneys representing themselves or the entity for whom they work, including the time and labor of any legal assistant as defined by MCR 2.626.

For the purpose of determining taxable costs under this subrule and under MCR 2.625, the party entitled to recover actual costs under this rule shall be considered the prevailing party.

-8-

(7)     Costs shall not be awarded if the case evaluation award was not unanimous. . . .

\* \* \*

(11)     If the "verdict" is the result of a motion as provided by subrule (O)(2)(c), the court may, in the interest of justice, refuse to award actual costs.  [MCR 2.403(O), amended March 24, 2021.]

The purpose of the sanction rule was to expedite and simplify final settlement of cases by placing the burden of litigation costs on the party who insists on trial by rejecting the evaluation. *Smith v Khouri*, 481 Mich 519, 527-528; 751 NW2d 472 (2008); *Magdich & Assoc, PC v Novi Dev Assoc, LLC*, 305 Mich App 272, 276-277; 851 NW2d 585 (2014).  Costs and attorney fees are awardable when both parties reject the award as well as when only one does.  *Haliw v City of Sterling Heights* (*On Remand*), 266 Mich App 444, 450; 702 NW2d 637 (2005); *Allard*, 271 Mich App at 402-403.  If applicable to the circumstances, the imposition of case evaluation sanctions is mandatory, *Cusumano v Velger*, 264 Mich App 234, 235; 690 NW2d 309 (2004), as indicated by the use of the word "must" in MCR 2.403(O)(1), *Great Lakes Gas Transmission Ltd Partnership v Markel*, 226 Mich App 127, 129; 573 NW2d 61 (1997); see also *Allard*, 271 Mich App at 398. Absent circumstances provided in MCR 2.403(O)(11) allowing for the trial court's discretion to decline to do so, the imposition of case evaluation sanctions is determined as a matter of law and not up to the discretion of the court.  *Great Lakes Gas Transmission*, 226 Mich App at 129-130.

For the purposes of the sanction rule, the verdict must represent the amount the prevailing party should be awarded, and it can be rendered by a jury or by the court after adjustments made to the jury's factual findings.  *Marketos v American Employers Ins Co*, 465 Mich 407, 414; 633 NW2d 371 (2001).  It includes a jury verdict, a judgment by the court after a bench trial, and a judgment entered as a result of a ruling on a motion after rejection of the evaluation.  MCR 2.403(O)(2); *Marketos*, 465 Mich at 414.

It is undisputed that: (1) plaintiff was awarded at least $100,000 in the case evaluation; (2) plaintiff and defendant both rejected this evaluation; (3) the case evaluation award was unanimous, MCR 2.403(O)(7); and (4) the jury verdict was more favorable to defendant and less favorable to plaintiff, under the 10% rule of MCR 2.403(O)(3).  Therefore, plaintiff "must pay the opposing party's actual costs," MCR 2.403(O)(1), which include taxable costs and a reasonable attorney fee, MCR 2.403(O)(6), subject to the limited exceptions stated in the rule.  The confusion surrounding the $3,500 award in the case evaluation is irrelevant because it does not affect this conclusion.

This Court stated there are three limited circumstances when a trial court is not required to grant sanctions mandated under MCR 2.403(O)(1):

First, in cases involving equitable relief, the court may decline to award costs if, considering both the equitable and monetary relief, the verdict is more favorable to the rejecting party than the mediation evaluation.  MCR 2.403(O)(5).  Second, the court may not award costs against a plaintiff in a dramshop action who rejects an award against the minor or alleged intoxicated person unless the court finds that the plaintiff was not motivated by the need to comply with the name and retain

provision of the dramshop act. MCR 2.403(O)(9). Third, the court may, in the interest of justice, refuse to award costs in cases where the "verdict" is a judgment entered as a result of a ruling on a motion after the party rejected the mediation evaluation. MCR 2.403(O)(11). [*Great Lakes Gas Transmission*, 226 Mich App at 130.]

The only exception that potentially applies to this case is the MCR 2.403(O)(11) exception. This Court has found, when MCR 2.403(O)(11) is applicable, the interests of justice support refusal to award costs and fees when (1) there is a legal issue of first impression presented, (2) when the law is unsettled and substantial damages are at issue, (3) when a party is indigent and an issue merits determination by a trier of fact, *Haliw v City of Sterling Heights*, 257 Mich App 689, 707; 669 NW2d 563 (2003), rev'd on other grounds 471 Mich 700 (2005),[7] (4) when there is significant financial disparity between the parties, (5) when there is misconduct of a party, or (6) when the effect on third persons might be significant, *Harbour v Correctional Med Servs*, *Inc*, 266 Mich App 452, 466; 702 NW2d 671 (2005).

The trial court found the exception in MCR 2.403(O)(11) was available in this case because: "Part of the judgment will be due to ruling on motions after rejection of the case evaluation award. The Order Regarding Defendant's Motion to Dismiss signed November 18, 2020 and second Order Regarding Defendant's Motion to Dismiss signed December 28, 2020 dismissed significant portions of plaintiff's claims." The orders referred to by the trial court dismissed plaintiff's claims to PIP benefits for medical expenses for specific providers because of a lack of support for the claims. However, the four providers dismissed in these orders were not accounted for in plaintiff's claim calculation at case evaluation. Additionally, the November 18, 2020 order dismissed plaintiff's attendant care claim, which was refuted by surveillance evidence, valued by plaintiff at the time of case evaluation at $19,200. Even considering removal of the attendant care claim, and the removal of expenses from other providers because of independent lawsuits and settlements, valued at $135,000, approximately $93,000 remained from plaintiff's case evaluation claim at the time of trial.

Clearly, the trial court was aware that the changes to the no-fault act and the advent of direct provider actions, pursuant to MCL 500.3112, as well as the impending changes announced on December 2, 2021 to MCR 2.403(O), pursuant to ADM File No. 2020-06, were changing the landscape of plaintiff's case. Plaintiff could not anticipate or be held responsible for the direct provider actions that reduced her overall claims. Although the trial court did not set aside the case evaluation based on plaintiff's motion for reconsideration in November 2021, the trial court recognized that the case evaluators did not explain the basis for their award and that,

---

[7] The Supreme Court in *Haliw v City of Sterling Heights*, 471 Mich at 710-711, reversed this Court's determination that appellate attorney fees and costs are recoverable as case evaluation sanctions under MCR 2.403(O); it did remand the case to the Court of Appeals for consideration whether the trial court abused its discretion by failing to apply the "interest of justice" exception under MCR 2.403(O)(11) because this Court determined on leave granted that the defendant was entitled to summary disposition.

Significant portions of plaintiff's claims (attendant care, certain medical expenses, replacement services and wage loss) were dismissed after the parties had rejected the case evaluation award. Another substantial portion of plaintiff's claims could not be presented at trial when her medical providers chose to pursue their own recoveries in separate actions; Dr. Tessie Jenkins and Northwest Neurology Clinic also entered an unrelated settlement that deprived plaintiff of additional medical expenses and potential testimony regarding the need for both continuing treatment and services. Thus, justice does not favor an award of costs and fees to defendant.

The case evaluation included provider claims that became direct provider claims under MCL 500.3112; once those providers filed their own claims for reimbursement, it reduced the claims that plaintiff could raise at trial despite those claims being included in plaintiff's case evaluation presentation. In fact, defendant acknowledged that claimed expenses from 5 of those providers equaled $135,136.66. Penalizing plaintiff for this change in the no-fault law that occurred in July 2020—only 5 months after the case evaluation—is the apparent injustice that the trial court recognized and plaintiff had no control over whether these direct provider claims would reduce her requested relief and make her liable for sanctions under MCR 2.403. While in its October 8, 2021 order, the trial court attributed to plaintiff the knowledge of these direct provider actions because plaintiff "assigned her claims" to them, such an assumption ignores the reality that under amended MCL 500.3112, medical providers do not need an assignment to pursue a direct cause of action for no fault benefits against an insurer.

Between case evaluation in February 2020 and trial in July 2021, the landscape of no-fault law and the advent of direct provider actions shifted dramatically. There is no evidence that plaintiff knew that Northwest Neurology, Michigan Spine and Pain, MI Imaging, Premier Orthopedics, and Executive Ambulatory Surgical Center would file independent direct provider actions or otherwise settle with defendant or that plaintiff actively "assigned" her claims to these providers. All five treatment providers were included in her medical expenses at case evaluation. Given that those direct provider claims raised after case evaluation, when added to the jury award, exceeds the $100,000 case evaluation, the sanction in MCR 2.403(O) should not apply; sanctions under these circumstances would not "encourage the parties to seriously consider the evaluation and provide financial penalties to the party that, as it develops, 'should' have accepted it but did not." *Khouri*, 481 Mich at 527-528. Penalizing plaintiff during this period of significant changes in the law does not encourage settlements, deter protracted litigation, or "shift[] the financial burden of trial onto the party who imprudently rejected the case evaluation." *Id.* See MCR 1.105 (requiring court "rules are to be construed, administered, and employed by the parties and the court to secure the just, speedy, and economical determination of every action.")

Unfortunately, no other cases have addressed this circumstance where the no-fault statute changed during the pendency of the action in a matter that gutted plaintiff's case evaluation request. Nevertheless, we affirm the trial court's denial of case evaluation sanctions because plaintiff's direct providers' claims of $135,136 should be attributed to her, thereby defeating Esurance's claim for attorney fees. Plaintiff could not predict, when care evaluation occurred, that the amendments to MCL 500.3112 would potentially obliterate her recovery if her direct providers chose to independently file their own actions. Therefore, case evaluation sanctions are inappropriate under these unique circumstances. And the now-former MCR 2.403(O)(2)(c) does not apply here because the jury verdict was not "a judgment entered as a result of a ruling on a

-11-

motion after rejection of the case evaluation." But the judgment could not include those direct provider actions that undermined the full value of plaintiff's claim *at the time of the case evaluation* but *not at the time of trial*. In light of the statutory purpose behind the now-eliminated case evaluation sanctions and the fluidity of the statutes regulating direct provider actions under the new no fault law, we find that the interests of justice require us to attribute the $135,000 in direct provider reimbursements to plaintiff for purposes of the case evaluation sanction. And, accordingly, we decline to award defendant attorney fees and costs.

## VI. CONCLUSION

The trial court did not err in failing to award attorney fees to defendant under the no-fault act because, considering the jury's verdict, finding plaintiff's claim was not fraudulent or excessive, and the changes in the value of plaintiff's claim brought on by many of her providers' independent lawsuits and settlements, denial of the fees was within the range of reasonable and principled outcomes. The same findings must support the conclusion that case evaluation sanctions under MCR 2.403(O) are inappropriate because the direct provider claims filed pursuant to amended MCL 500.3112 that plaintiff could not pursue at trial due exceeded $135,000—well beyond the $100,000 case evaluation that both parties rejected.

Affirmed. Plaintiff may tax costs.

/s/ Mark T. Boonstra
/s/ Stephen L. Borrello
/s/ Kathleen A. Feeney

-12-